**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GLENN ESPRIT and**
**SONNEL ESPRIT,**

      **Plaintiffs,**              **Case No.:**

**v.**

                                **CLASS ACTION ALLEGATIONS**

**DANIEL MULLINS TRUCKING, INC.**

      **Defendant.**

_____/

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, GLENN ESPRIT and SONNEL ESPRINT, by and through their undersigned counsel and sue Defendant, DANIEL MULLINS TRUCKING, INC., and states as follows:

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.      Plaintiff, GLENN ESPRIT, is a resident of Hillsborough County, Florida.

4.      Plaintiff, SONNEL ESPRIT, is a resident of Pasco County, Florida.

5.      Defendant, DANIEL MULLINS TRUCKING, INC., is a Florida Profit Corporation authorized and doing business in this Judicial District.  At all times material, Defendant employed the requisite number of employees (approximately 100) and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. §1981.

6.      At all times material, Plaintiffs were applicants for employment of Defendant within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act, and 42 U.S.C. §1981.

## GENERAL ALLEGATIONS

7.      At all times material, Defendant acted with malice and reckless disregard for Plaintiffs' federal and state protected rights.

8.      Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

9.      Plaintiffs requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

12.     On July 6, 2020, Plaintiff Glenn Esprit timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

13.     On January 11, 2021, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination.  This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

14.     On July 6, 2020, Plaintiff Sonnel Esprit timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

15.     On January 11, 2021, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination.  This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

16.     Plaintiffs have satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charges.

## FACTUAL ALLEGATIONS

17.     Defendant is a trucking company, providing local dump truck deliveries within the State of Florida.

18.     Defendant employs approximately 100 individuals.

19.     According to Defendant's job fair postings, it requires the following for its CDL positions:

       (a)     Must be 21 years old;

       (b)     Have at least 2 years CDL experience

       (c)     Able to pass 25-mile Road Test;

       (d)     No more than 3 accidents/violations within the last 3 years;

       (e)     Less than 1 hr. commute home from terminal;

       (f)     DOT guidelines re: communicating in English.

20.     According to Defendant's website, the following minimum qualifications are required for CDL Class A and Class B Heavy Truck drivers:

       (a)     Be at least 21 years of age;

       (b)     Be able to read, write, and communicate in English as described by D.O.T. guidelines;

       (c)     Have at least two (2) years driving experience within the last seven (7) years under a D.O.T. certified carrier with Class (A or B) vehicles;

       (d)     Have no more than 4 jobs in the last 7 years;

(e)  Have no alcohol or drug related convictions in the last ten (10) years;

(f)  Have never tested positive for drugs or alcohol under DOT guidelines;

(g)  Have no more than a combination of 2 moving violations within the last 3 years;

(h)  No (at fault) preventable accidents within last 7 years;

(i)  No speeding tickets in any motor vehicle at or above 15 mph over the posted speed limit in the last 3 years;

(j)  No Careless or Reckless driving convictions within last 3 years;

(k)  Must be able to pass a D.O.T. physical examination, Drug Test, and be in physical condition to perform all essential functions required by driver's job description;

(l)  Have no disqualifying offenses or score per the 2010 CSA/PSP which prohibits you from operating a commercial vehicle;

(m)  Class-A license drivers must be able to operate a manual transmission;

(n)  Pass a mandatory 25-mile Road Test;

(o)  Because our drivers are Home Daily, Applicants must live within one (1) hour from our terminal locations.

21.  Plaintiffs met all of Defendant's posted job qualifications.

22.  Defendant asserts that "only a small fraction" of applicants meets its requirements and the highest hiring rate that it has had in the last 4 years is 19%.

23.     Defendant continues to encourage drivers to apply for its many open positions and holds job fairs offering $3,000 signing bonuses to new company drivers.

## FACTUAL ALLEGATIONS
### (as to Plaintiff Glenn Esprit)

24.      Plaintiff Glenn Esprit is a 48-year-old Black male and a veteran of the United States Army, 82nd Airborne Division where he served three (3) tours in Iraq as a Paratrooper.

25.     On March 28, 2020, Plaintiff Glenn Esprit spoke with Meredith McLane (Human Resources Manager) about a potential Driver position with Defendant.   They spoke at length about Plaintiff's work experience and his impeccable driving record with no citations or legal issues.

26.     On May 18, 2020, Plaintiff Glenn Esprit took a driving test/road test for Defendant.

27.     Dana Coleman (Safety Manager) informed Plaintiff Glenn Esprit that he passed the test and would next have to take a urine drug screening.

28.     After taking the driving test, Plaintiff Glenn Esprit interviewed with McLane.   During the interview, McLane appeared uneasy and had a coarse attitude toward Plaintiff Glenn Esprit that made him feel uncomfortable. Nevertheless, they discussed Plaintiff Glenn Esprit's work history, the type of work that Defendant did, and all of the work that was available with the company.

29.     At one point during the interview, McLane asked Plaintiff Glenn Esprit what his wife did for a living.  Stunned, Plaintiff Glenn Esprit told her that his wife is a physician.  McLane did not respond, just smirked at Plaintiff Glenn Esprit and nodded.

30.     On May 20, 2020, Plaintiff Glenn Esprit received an email from McLane stating that "we are going to move forward with other applicants."

31.     On May 21, 2020, Plaintiff Glenn Esprit emailed McLane, reminded her of his veteran status, that the company was still posting hiring signs at its terminal and online, and asked the specific reason as to why he was not hired.

32.     On May 22, 2020, McLane responded to Plaintiff Glenn Esprit's email and stated: "DMT selected the most qualified applicants to move forward."

33.      Each time that an employer or other entity runs the information from Plaintiff's driver's license, Plaintiff receives a letter from the Department of Transportation.  Plaintiff Glenn Esprit did not receive a letter notifying him that Defendant ran my license.

## FACTUAL ALLEGATIONS
### (as to Plaintiff Sonnel Esprit)

34.     Plaintiff Sonnel Esprit is a 28-year-old Black male.

35.     On April 23, 2020, Plaintiff Sonnel Esprit applied for a Driver position with Defendant.

36.     Shortly thereafter, Meredith McLane emailed Plaintiff Sonnel Esprit and stated that his application was sent back, requesting more information.

37.     Plaintiff Sonnel Esprit updated the information and emailed McLane informing her of the same.

38.     McLane responded and stated that what Plaintiff Sonnel Esprit provided was "plenty" and asked for "a day or so" to process and qualify it.

39.      On the morning of April 24, 2020, McLane called Plaintiff Sonnel Esprit to conduct an interview, go over his application, and discuss his driving experience.

40.     After the discussion, McLane offered Plaintiff Sonnel Esprit the position with an anticipated start date of May 11, 2020, pending his drug test, driving test, and orientation.

41.     On April 24, 2020 Plaintiff Sonnel Esprit received an email from McLane stating that "we are going to move forward with other applicants."

42.     On April 25, 2020, Plaintiff Sonnel Esprit responded to McLane's email and asked for an explanation or reasoning as to why he was offered the job and now the company was withdrawing the offer.

43.     On April 27, 2020, McLane responded: "I can appreciate that. Unfortunately, we don't discuss why an application does not move on to the next phase."

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs reallege and incorporate paragraphs one (1) through forty-three (43) as though set forth fully herein.

45.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure ("Rule 23").  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

46.     Pursuant to Rule 23, Federal Rules of Civil Procedure, Plaintiffs bring this case as a class action on behalf of all Black and/or African American qualified applicants for employment with Defendant for a Company Driver (CDL) position who were not hired during the statutory period.

47.     This action is properly maintainable as a class action because the requirements of Federal Rules of Civil Procedure 23(a), Rule 23(b)(1), (2), and (3) are met as follows:

48.     **Numerosity/Impracticability of Joinder**.  The Class is so numerous that joinder of all members is impracticable.  Upon information and belief, the Class has more than 100 members, thus joinder of those class members would be difficult, inconvenient, and inefficient.  Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court by resolving the issues concerning Defendant's violations federal and state

anti-discrimination laws in one forum, thus preserving judicial economy.

49.     **Commonality**.  Defendant engaged in a common course of conduct toward Plaintiffs and members of the Class by denying employment to qualified Black and/or African American applicants due to race.  There are questions of law and fact common to Plaintiffs and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

(a)     Whether Defendant violated Section 1981, Title VII, and the FCRA by systematically denying Black and/or African American applicants employment due to their race;

(b)     Whether Defendant has engaged in a pattern or practice of discriminating against Black and/or African American applicants; and

(c)     Whether Plaintiffs are entitled to back pay, front pay, interest, compensatory damages, punitive damages, declaratory relief, injunctive relief, and attorneys' fees and costs for Defendant's violations of the law.

50.     The above-referenced legal and factual questions related to all of the class members and those legal questions are substantially related to resolving this litigation.  Stated differently, Defendant's course of conduct in violating Section 1981, Title VII, and the FCRA affects all class members and the elements of the aforementioned causes of action are shared by all class members.

51.     Plaintiffs' contentions are capable of class-wide resolution, such that the determination of the truth or falsity of the claims will revolve around an issue that is central to the validity of each one of the claims in one stroke.  Whether

Defendant violated Section 1981, Title VII, and the FCRA by (1) denying Black and/or African American applicants initial employment due to their race.  In other words, answers to these questions will determine, in "one stroke," which side will win the case.

52.   **Typicality**.  Plaintiffs' claims are typical of the claims of the Class. Plaintiffs' claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories. Specifically, Plaintiffs, like the class members, were denied initial employment due to their race.  Plaintiffs, like the class members, have been damaged by Defendant's violations of Section 1981, Title VII, and the FCRA.

53.   The relief sought is typical and outlined in the Prayer for Relief below.

54.   **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs understand the issues in this case and are committed to vigorously pursuing this claim on behalf of the Class.  Plaintiffs have suffered the damages alleged and have no interests antagonistic to the interest of any other Class members.

55.   Plaintiffs have retained competent and capable legal counsel with experience in class action litigation, including race discrimination claims and related class and collective action litigation.  Plaintiffs and counsel are committed to prosecuting this action vigorously on behalf of the Class, and neither have

interests that are contrary to, or that conflict with, those of the proposed Class.

56.     Defendant has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

57.     **FRCP 23(b)(1)**.  This action is properly maintainable as a class action under Rule 23(b)(1), Federal Rules of Civil Procedure, because the prosecution of separate actions by, or against, members of the class would create a risk of inconsistent adjudications regarding individual class members that would establish incompatible standards of conduct for Defendant, the party opposing the class.  Thus, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

58.     Additionally, prosecuting separate actions by individual members of the Class would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.   Moreover, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  A Class action presents far few management difficulties and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

59.     The central question in this litigation is whether Defendant denied initial employment to Black and/or African American applicants due to their race.

Stated differently, whether Defendant engaged in a pattern or practice of discriminating against job applicants based on their race.

60.   **FRCP 23(b)(2)**.   This action is also properly maintainable as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure.

61.   Defendant is alleged to have violated Section 1981, Title VII, and the FCRA and acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis.   Defendant has maintained a practice of violating federal and state law in its hiring decisions.   As such, Defendant has acted or refused to act on grounds that apply generally to the Class.

62.   The monetary relief Plaintiffs seek either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.

63.   **FRCP 23(b)(3).**   This action is also properly maintainable as a class action under FRCP 23(b)(3).  The questions of law and fact common to all members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

64.   Defendant engaged in a common course of conduct toward Plaintiffs

and members of the Class.  The common issues arising from this conduct that affect Plaintiffs and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether Defendant violated his or her rights under Section 1981, Title VII and the FCRA and whether a remedy should be provided under those laws.  Moreover, by resolving the dominant, central, and overriding issues as to whether Defendant has violated the Class members' rights, Defendant will not have to face multiple claims related to the issue.

65.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide adjudication is a superior manner of compelling Defendant to comply with the federal and state anti-discrimination laws.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small, as the denial of employment opportunities based on race is a common problem that that affects all members of the affected applicants and a common resolution of Defendant's violations of the law will result in far greater certainty for Defendant's Black and African American applicants

66.    Management of these claims in a Class is likely to present significantly

fewer difficulties than are presented in many individual class claims because the relief requires uniform treatment between prevailing plaintiffs. Class treatment is superior to multiple individual lawsuits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

67.    Upon information and belief, there is no other existing lawsuit instituted by members of the Class raising these allegations prior to the time that this Complaint is filed.

## COUNT I
## 42 U.S.C. §1981 DISCRIMINATION (as to both Plaintiffs)

68.    Plaintiffs reallege and incorporate paragraphs one (1) through forty-three (43) as though set forth fully herein.

69.    Plaintiffs, Black males, are members of a protected class.

70.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiffs on account of their race by failing to hire Plaintiffs.

71.    Defendant's adverse employment acts toward Plaintiffs were motivated by race-based considerations.

72.    Defendant's unlawful and discriminatory employment practices toward Plaintiffs were intentional.

73.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiffs.

74.    Defendant knew or should have known of the discrimination.

75.    As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs prays for the following damages against Defendant:

        a.    Back pay and benefits;

        b.    Interest on back pay and benefits;

        c.    Front pay and benefits;

        d.    Compensatory damages for emotional pain and suffering,

        e.    Punitive damages;

        f.    Attorneys' fees and costs;

        g.    Injunctive relief;

        h.    For any other relief this Court deems just and equitable.

## COUNT II
## TITLE VII – RACE DISCRIMINATION (as to both Plaintiffs)

76.    Plaintiffs reallege and incorporate paragraphs one (1) through forty-three (43) as though set forth fully herein.

77.     Plaintiffs, Black males, are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

78.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiffs on account of their race by failing to hire Plaintiffs.

79.     Defendant's adverse employment acts toward Plaintiffs were motivated by race-based considerations.

80.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

81.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiffs.

82.     As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs prays for the following damages against Defendant:

> a.     Back pay and benefits;
>
> b.     Interest on back pay and benefits;
>
> c.     Front pay and benefits;
>
> d.     Compensatory damages for emotional pain and suffering,

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief;

h.     For any other relief this Court deems just and equitable.

## COUNT III
## <u>FLORIDA CIVIL RIGHTS ACT – RACE DISCRIMINATION</u>

83.     Plaintiffs reallege and incorporate paragraphs one (1) through forty-three (43) as though set forth fully herein.

84.     Plaintiffs, Black males, are members of a protected class under Florida Civil Rights Act.

85.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiffs on account of their race by failing to hire Plaintiffs.

86.     Defendant's adverse employment acts toward Plaintiffs were motivated by race-based considerations.

87.     Defendant's unlawful and discriminatory employment practices toward Plaintiffs were intentional.

88.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiffs.

89.     As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering,

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief;

h.     For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

90.     Plaintiffs, GLENN ESPRIT and SONNEL ESPRIT, demand a trial by jury on all issues so triable.

**DATED** this 9th day of April 2021.

**FLORIN GRAY BOUZAS OWENS, LLC**

*/s/ Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804

wolfgang@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*